**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ELIZABETH TRUSLER,**

      **Plaintiff,**

v.                                       Civil Action 2:20-cv-6411
                                        Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Elizabeth Trusler, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff protectively filed her application for DIB on December 19, 2017, alleging that she was disabled beginning October 8, 2012. (Tr. 226–29). Later, she amended her onset date of disability to September 30, 2016. (*See* Tr. 15, 33). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing. (Tr. 29–58). On December 20, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–28). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 15, 2020 (Doc. 1), and the Commissioner filed the administrative record on May 26, 2021 (Doc. 10). The matter has been briefed and is ripe for consideration. (Docs. 11, 13, 14).

**A. Relevant Medical Evidence**

The ALJ usefully summarized Plaintiff's medical records and symptoms related to her impairments:

> The [Plaintiff] has complaints of neck and back pain. On imaging, the spinal canal was intact, and there was no neural foraminal encroachment (Exhibits B11F and B17F). The [Plaintiff] also has mild degenerative joint disease, or osteoarthritis, of the knees (Exhibit B18F, page 9). Finally, an x-ray of the hips showed borderline hip dysplasia with mild arthritic changes of the hips (Exhibit B18F and B19F). While the [Plaintiff] has suggested a worsening of pain, over time, the objective evidence has established little by way of positive findings.
>
> The record establishes normal range of motion about the bilateral upper and lower extremities (Exhibits B3F, page 4; B8F, page 25; B11F, page 10; B19F, pages 14 and 17; B20F, pages 10 and 14; and B28F, page 5). Extension and flexion were identified as normal (Exhibit B30F, pages 27, 31, 35 and 39). Normal strength, tone and sensation were also identified about the extremities (Exhibits B7F, pagers 18 and 33; B15F, page 20; B19F, page 62; B17F, page 7; B19F, page 40; B27F, page 4; and B30F, page 2). Finally, while the [Plaintiff]'s gait was, at times, noted to be mildly antalgic on the right (Exhibits B17F, page 9; and B20F, page 27), the [Plaintiff] herself denied an abnormal gait (Exhibit B8F, pages 53, 64, 106 and 119). Further, the [Plaintiff] was noted to have normal coordination and gait (Exhibits B3F, page 4; B4F, page 8; B13F, page 30; B19F, pages 11, and 17; B20F, pages 8, 14; B22F, pages 22, and 33; B25F pages 1 and 4; and B30F, page 47). [She] was able to toe walk and heel walk (Exhibit B30F, pages 27, 31, 35, and 40).
>
> In addition to the [Plaintiff]'s degenerative disc disease, osteoarthritis of the knees, and hip dysplasia, the [Plaintiff] has made allegations of bilateral foot and right ankle pain. In early 2017, the [Plaintiff] reported a 32-year history of right ankle pain. An MRI showed only mild peroneal tenosynovitis, a low-grade deep fiber ligamentous sprain; mild central cord plantar fasciitis; and mild calcaneocuboid degenerative change (Exhibit B4F, page 2). In March 2017, the [Plaintiff] underwent ankle arthroscopy and stabilization (Exhibit B6F). In October 2017, the [Plaintiff] fell and reported injuring her ankle (Exhibit B8F, pages 117-118). However, x-rays of the right ankle completed in December 2017 showed only diffuse osteopenia (Exhibit B11F, page 27 and B22F, page 25). In January 2018, an MRI of the right ankle showed no significant joint effusion. It was noted to show irregular cartilage and edema in the anterior edge of the tibia and peroneal

tendinosis (Exhibit B11F, page 40 and B15F). Physical examination showed good peroneal function and stable ankle with no indication for revision surgery (Exhibit B27F). While the [Plaintiff]'s foot pain was considered neuritic in character, EMG study of the lower extremities proved negative (Exhibit B30F).

While the [Plaintiff] is diagnosed with ongoing plantar fasciitis and makes continued complaints of bilateral foot pain, the evidence does not support limitations greater than those indicated in the established residual functional capacity. In fact, as has been mentioned, normal strength, tone and sensation were identified about the extremities (Exhibits B7F, page[]s 18 and 33; B15F, page 20; B19F, page 62; B17F, page 7; B19F, page 40; B27F, page 4; and B30F, page 2). Finally, while the [Plaintiff]'s gait was, at times, noted to be mildly antalgic on the right (Exhibits B17F, page 9; and B20F, page 27), the [Plaintiff] herself denied an abnormal gait (Exhibit B8F, pages 53, 64, 106 and 119). Further, the [Plaintiff] was routinely noted to have normal coordination and gait (Exhibits B3F, page 4; B4F, page 8; B13F, page 30; B19F, pages 11, and 17; B20F, pages 8, 14; B22F, pages 22, and 33; B25F pages 1 and 4; and B30F, page 47). Further, [she] was notably able to toe walk and heel walk (Exhibit B30F, pages 27, 31, 35, and 40).

The record also reveals a diagnosis of bilateral carpal tunnel syndrome (Exhibits (B17F, B18F, B20F, B26F, B27F, B28F, and B30F). While there is mention of feelings of heaviness and weakness about the hands, EMG study showed only mild bilateral carpal tunnel (Exhibit B19F, page 55) and left ulnar neuropathy at the elbow (Exhibit B19F, page 55). While this impairment, in combination with the [Plaintiff]'s other impairments may limit the [Plaintiff]'s physical abilities, those limitations have been more than adequately considered in the established residual functional capacity.

Finally, the record establishes a body mass index (BMI) between 42.8 and 53.38 (Exhibits B7F, page 56; B8F, page 97; B18F; B21F, page 2; B22F, page 19; and B30F, page 17). Body mass index is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). In the medical community, obesity is defined as a BMI of 30.0 or higher (Social Security Ruling 19-2p).

(Tr. 20–21).

### B. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement on December 31, 2017, and did not engage in substantial gainful employment during the period from her alleged onset date (September 30, 2016), through her date last insured (December 31, 2017). (Tr. 17). The ALJ determined that, through the date last insured, Plaintiff had the following severe combination of

3

impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the knees; bilateral hip dysplasia; carpal tunnel syndrome; and obesity. (*Id.*). Yet, the ALJ, found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment. (Tr. 18).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, [the ALJ] finds that, through the date last insured, the [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours in an eight-hour workday and can stand and/or walk for six hours in an eight-hour workday. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can frequently perform handling, fingering and feeling. She can tolerate occasional exposure to extreme temperatures, vibrations and hazards.

(Tr. 19).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record …" (Tr. 20).

The ALJ then turned to the opinion evidence:

> The State agency medical consultants' physical assessments B3A and B5A are persuasive. The State agency consultants retain significant program knowledge. While new evidence has been received as part of the current record, which the consultants were not privy to review, that evidence does not support any limitation greater than those established by the consultants or assessed in the residual functional finding. The consultants seemed to have adequately considered the combined effect of the [Plaintiff]'s impairments.

(Tr. 22).

Relying on the VE's testimony, the ALJ concluded that, through the date last insured, Plaintiff was capable of performing her past relevant work as a rental budget clerk. (Tr. 22). The ALJ therefore concluded that Plaintiff "was not under a disability, as defined in the Social Security

4

Act, at any time from September 30, 2016, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f))." (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff raises three assignments of error. To begin, she asserts that the ALJ erred at step two by failing to find Plaintiff's bilateral plantar fasciitis as a medically determinable impairment. (Doc. 11 at 10–11). Next, Plaintiff contends the ALJ erred in her RFC determination by failing to accommodate Plaintiff's foot conditions. (*Id.* at 11–13). Finally, Plaintiff says that she is disabled pursuant to Medical Vocational Guidelines ("Grids") Rule 201.14 as of her alleged onset date, and

5

by Rule 201.06 as of her 55th birthday. (*Id.* at 13).

The Commissioner counters that the ALJ carefully reviewed the entire evidence of record and assessed a detailed residual functional capacity finding for a limited range of light work despite her impairments. The Commissioner says that the ALJ explained that while Plaintiff was diagnosed with plantar fasciitis and complained of bilateral foot pain, the evidence failed to support limitations greater than those reasonably found in the RFC determination. And, according to the Commissioner, the ALJ appropriately relied on the vocational expert testimony that Plaintiff could perform her past light work as a rental budget clerk and therefore Plaintiff failed to demonstrate that her claim must be evaluated under the sedentary grid rules. (*See generally*, Doc. 13). Ultimately, the Undersigned concludes that the ALJ did not err in her consideration of Plaintiff's plantar fasciitis, and substantial evidence supports Plaintiff's RFC.

### A. Step Two

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Additionally, to be classified as "medically determinable" an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

Here, Plaintiff argues that the ALJ erred by not designating her plantar fasciitis as a severe impairment. (Doc. 11 at 11). Plaintiff correctly notes that the ALJ did not explicitly designate her plantar fasciitis as a severe impairment. (Tr. 17 (listing by the ALJ of Plaintiff's severe impairments)). Yet, the ALJ found that plaintiff had multiple severe impairments, including "degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the knees; bilateral hip dysplasia; carpal tunnel syndrome; and obesity…." (Tr. 17). And, importantly, the ALJ expressly considered Plaintiff's plantar fasciitis and its effect on her ability to work when assessing the medical evidence in the RFC analysis. (*See* Tr. 20 ("An MRI showed only mild peroneal tenosynovitis, a low-grade deep fiber ligamentous sprain; mild central cord plantar fasciitis; and mild calcaneocuboid degenerative change."); Tr. 21 ("While the claimant is diagnosed with ongoing plantar fasciitis and makes continued complaints of bilateral foot pain, the evidence does not support limitations greater than those indicated in the established residual functional capacity.")).

7

In such circumstances, courts have determined that a failure to categorize a particular impairment as severe or non-severe is harmless. *King v. Comm'r of Soc. Sec.*, No. 2:15-CV-2225, 2016 WL 3437379, at *4 (S.D. Ohio June 22, 2016), *report and recommendation adopted,* No. 2:15-CV-2225, 2016 WL 3689898 (S.D. Ohio July 12, 2016). In fact, the Sixth Circuit has warned against remand when it would be an "'idle and useless formality.'" S*ee, e.g.*, *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (noting that judicial review of agency action should not be a ping-pong game) (quoting *Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")). So, to the extent the ALJ failed to classify Plaintiff's bilateral plantar fasciitis as severe, any such error was harmless. Plaintiff has not shown that the ALJ failed to consider the impact of her plantar fasciitis on her ability to work and thus has failed to show reversible error.

**B.     RFC Analysis**

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion

8

testimony), and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

Here, the ALJ determined that Plaintiff had the "residual functional capacity to perform light work." (Tr. 19). Plaintiff argues that since the ALJ failed to accommodate her foot condition in the RFC, the RFC is not supported by substantial evidence. (Doc. 11 at 13). Specifically, Plaintiff takes issue with the ALJ determination that she can stand or walk for up to six hours per day. (Doc. 11 at 12). Plaintiff states that the ALJ should have considered her "foot and ankle pain, decreased reflexes, and antalgic gait." (Doc. 11 at 12 (referring to Tr. 642)). Additionally, in reply (Doc. 14 at 2–3), Plaintiff says that the ALJ did not consider longitudinal split tearing of the peroneus brevis tendon (Tr. 381), surgical scarring, acute chronic plantar fasciitis, and tibiotalar joint effusion with synovitis (Tr. 668), or bilateral AFO braces and an orthopedic consultation (Tr. 669, 736, 1103–08).

Yet, a review of the record shows that the ALJ did consider Plaintiff's bilateral foot and right ankle pain in determining the RFC. (Tr. 20). In considering Plaintiff's medical records, she expressly noted "an MRI [that] showed only mild peroneal tenosynovitis, a low-grade deep fiber ligamentous sprain; mild central cord plantar fasciitis; and mild calcaneocuboid degenerative change." (Tr. 20 (citing Tr. 369))." The ALJ also considered Plaintiff's "ankle arthroscopy and stabilization." (Tr. 20 (citing Tr. 382)). The ALJ further addressed Plaintiff's October 2017 ankle injury (Tr. 563–64)—but pointed out that "x-rays of the right ankle completed in December 2017 showed only diffuse osteopenia." (Tr. 20 (citing Tr. 655)). The ALJ went on to analyze Plaintiff's

9

January 2018 right ankle MRI that "showed no significant joint effusion" but it "was noted to show irregular cartilage and edema in the anterior edge of the tibia and peroneal tendinosis." (Tr. 21 (citing Tr. 668 and Tr. 725–52)). The ALJ also mentioned a physical examination that "showed good peroneal function and stable ankle with no indication for revision surgery." (Tr. 21 (citing Tr. 1102–09)). The ALJ also noted that Plaintiff's foot pain was considered "neuritic in character" but that an "EMG study of the lower extremities proved negative." (Tr. 21 (citing Tr. 1124–71)).

Based upon all of these records, the ALJ ultimately concluded that "[w]hile the claimant is diagnosed with ongoing plantar fasciitis and makes continued complaints of bilateral foot pain, the evidence does not support limitations greater than those indicated in the established residual functional capacity." (Tr. 21). The ALJ further supported this conclusion by stating that "normal strength, tone and sensation were identified about the extremities." (Tr. 21 (citing Tr. 402, 417, 744, 891, 764, 869, 1105, 1125)). And noting that "while the claimant's gait was, at times . . . mildly antalgic on the right (Tr. 766, 963), the claimant herself denied an abnormal gait." (See Tr. 499, 510, 552, 565). And, said the ALJ, "the claimant was routinely noted to have normal coordination and gait (Tr. 366, 375, 704, 840, 846, 944, 950, 1005, 1016, 1065, 1068, 1170)." (Tr. 21). Plaintiff was also "notably able to toe walk and heel walk." (Tr. 21 (citing Tr. 1150, 1154, 1158, 1163)).

The ALJ was also persuaded by Plaintiff's "routine and conservative medical treatment," and Plaintiff's own statements regarding "her high functioning activities of daily living that include tending to all personal care needs, performing household chores, shopping in the grocery store, and visiting with her grandkids." (Tr. 20 (citing Tr. 257–65)). Additionally, the ALJ relied upon the State agency medical consultant physical assessments. (Tr. 22 (citing Tr. 88–101, 103–18)). On this final point, the ALJ acknowledged that new evidence was received in the record, which

10

the consultants did not evaluate, but expressed that the "evidence does not support any limitation greater than those established by the consultants or assessed in the residual functional finding." (Tr. 22).

In sum, the ALJ considered and weighed the evidence before her—including Plaintiff's foot and ankle pain—and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence . . . ." (Tr. 20). Because of this, the ALJ determined Plaintiff's had the RFC to perform light work.

Fundamentally, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from re-weighing the evidence and substituting its judgment for the ALJ's. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). In sum, because the ALJ expressly considered Plaintiff's foot and ankle problems, including plantar fasciitis, and its impact on her ability to work, substantial evidence supports the ALJ's RFC finding.

    **C.**    **Application of Grids**

Finally, Plaintiff argues that she is disabled per the Medical-Vocational Guidelines ("Grids"). The Social Security Administration has promulgated Grids that apply at the final step

11

of the sequential disability analysis. *See* 20 C.F.R. § 404.1569. These rules "apply . . . in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. The rule applies to determine if a person is disabled or if the findings of fact on all factors is the same as the rule. But, as "explain[ed] in § 200.00 of appendix 2, we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569.

Plaintiff argues that *if* the ALJ found Plaintiff limited to sedentary, unskilled work, the "Grids", Medical-Vocational Guidelines (20 C.F.R. § Pt. 404, Subpt. P, App. 2), would have mandated a finding of disabled. (Doc. 11 at 13). First, the grids apply when a person is found to be incapable of performing past relevant work. 20 C.F.R. § 404.1569; 20 C.F.R. § Pt. 404, Subpt. P, App. 2. S*ee also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 714 (6th Cir. 2013). Here, the ALJ found Plaintiff capable of performing her past relevant work. (Tr. 22 ("claimant was capable of performing past relevant work as a rental budget clerk.")). Second, even assuming that Plaintiff was not capable of her past work, Plaintiff's argument is premised upon a finding limiting her to the sedentary exertion level. (Doc. 11 at 13 (citing Rule 201.14 and Rule 201.06)). No such finding was made. The ALJ determined that Plaintiff was capable of performing light work—a finding that the undersigned concluded in the previous section was supported by substantial evidence. Thus, a finding that Plaintiff is disabled under Medical Vocational Rule 201.14 or Rule 201.06 is not supported.

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 11) and **AFFIRM** the Commissioner's decision.

V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   November 9, 2021                       /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE